# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| **PAULA DENISE PRUITT,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | **Case No.: 3:11-CV-03082-RDP** |
| } | |
| **MICHAEL J. ASTRUE,** } | |
| **COMMISSIONER OF SOCIAL** } | |
| **SECURITY,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OF DECISION

Plaintiff Paula Denise Pruitt brings this action pursuant to Sections 205(g) and 1631(c) of the Social Security Act (the "Act"), 42 U.S.C. §§ 405(g), 1383(c), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI").

### I.  Proceedings Below

Plaintiff filed her applications for a period of disability, DIB, and SSI on June 3, 2007, alleging a disability onset date of September 30, 2006, which she later amended to July 31, 2007.[1] (R. 148-57, 167).  Plaintiff alleged that she could not work because of the following illnesses or conditions: asthma, emphysema, chronic bronchitis, eczema, and mental problems.  (R. 173). Plaintiff claimed that these illnesses and conditions limited her ability to work because they impaired her breathing and caused her to itch.  (R. 173).  Plaintiff's date last insured was December 31, 2008.

---

[1] This was the eighth application for disability under the Act filed by Plaintiff.  (R. 82, 115).  Plaintiff's seventh application for disability had been filed on March 2, 2005 and denied on September 29, 2006.  (R. 45, 82, 112-23).  The appeals council affirmed that decision on April 21, 2008 (R. 82), and Plaintiff filed her present claim for disability on June 3, 2008.  (R. 148-57).  Plaintiff also filed for disability in 2004, 2001, 1995, 1993, 1992, and 1974; all of these previous applications were deni all of these previous applications were denied.  (R. 45, 82, 115).

(R. 19). Plaintiff's applications were denied initially and also upon reconsideration. (R. 1-4, 14-33). Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"), which was held on March 4, 2010 in Florence, Alabama. (R. 80, 140).

In his decision, dated April 28, 2010, the ALJ determined that Plaintiff was not disabled under sections 216(i) and 223(d) of the Act through the date of the decision. (R. 17, 18). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 1-3), that decision became the final decision of the Commissioner and, therefore, a proper subject of this court's appellate review.

At the time of the hearing, Plaintiff was 41-years old and had not worked since July 31, 2007. (R. 19, 27, 165-66). She had an eleventh grade education and no vocational training. (R. 87-88). Plaintiff stated she could lift a gallon of milk with either hand, sit for an hour at a time, and stand for approximately twenty minutes at a time. (R. 96). She claimed that she would be out of breath by the time she climbed halfway up the stairs to her second-story apartment, and she estimated that she could walk one-half block at the most. (R. 96-97). Concerning her breathing problems, Plaintiff said that in an average week she would have three or four good days, and the rest would be bad days. (R. 102). Plaintiff estimated that she used her albuterol nebulizer (*i.e.*, breathing machine) three times on a good day, but that on a bad day she used it constantly to no avail. (R. 101). She said that on a good day she was capable of cleaning her apartment, but that on a bad day she was not. (R. 108). Plaintiff testified that she had quit her most recent job because of problems related to her asthma, and she had not attempted to work since then. (R. 89). She also claimed that she had been forced to leave her previous jobs because of problems related to her skin and her breathing (R. 97-98), although in her 2006 hearing before the ALJ for her previous disability claim, Plaintiff testified

that she had quit her last job because of a personality conflict with her boss. (R. 54). In the 2006 hearing, Plaintiff also admitted she had stopped taking the Prednisone that she had been prescribed for her asthma because it caused her to gain weight. (R. 68). In both hearings, the ALJ noted that Plaintiff had continued smoking despite its effect on her condition and the repeated counseling she had received from her medical providers about smoking cessation. (R. 67, 105-06).

      Plaintiff's records reveal that she received non-emergency care twelve times at Southern Rural Health Consortium from 2005 through 2008 for problems related to her asthma, COPD, eczema, swelling in her arms, and for abdominal pain. (R. 277-89). Only two of those visits occurred after her alleged onset date of July 31, 2007. (R. 277-78).

      Plaintiff also visited the emergency room ("ER") several times between 2005 and 2008. (R. 238-456). On March 1, 2005, Plaintiff was admitted to the ER at Russellville Hospital after she complained of difficulty breathing. (R. 238-42). Her initial examination revealed that she was "in no severe respiratory distress," although her X-rays revealed evidence of pneumonia on the left side with a left pleural effusion. (R. 238). Plaintiff told the doctor that she took her albuterol inhaler about three times a week and that she used Advair 250/50 intermittently. (R. 240). Plaintiff was given antibiotics and discharged on March 3, 2005. (R. 238, 241). On that date, Plaintiff's examination revealed only minimal expiratory wheezing. (R. 241).

      Plaintiff received routine examinations at Russellville Hospital on March 28, June 2, and August 12, 2005. On each occasion, the examining physician found that Plaintiff's heart and lungs were normal. (R. 252-54).

On October 22, 2005, Plaintiff was seen at Russellville Hospital for hand pain resulting from an alleged assault, and the examining physician found a dislocation of the middle phalanx in relationship to the proximal phalanx of her second digit. (R. 251).

On December 22, 2006, Plaintiff was admitted to the ER at Helen Keller Hospital because of a periapical abscess in her teeth. (R. 271). Plaintiff was discharged the same day. (R. 271).

On December 30, 2006, Plaintiff was admitted to the ER at Shoals Hospital because of alleged difficulty breathing, abdominal pain, and sharp chest pain. (R. 257-60). Plaintiff had previously been prescribed albuterol sulfate (inhaler) and Prednisone for her asthma. Hospital staff noted that Plaintiff: was noncompliant with triage; yelled during her assessment; refused to allow her pulse to be taken; removed the oxygen saturation monitor; and initially refused to allow her blood to be drawn. (R. 266-67). In triage, the nurse noted multiple pill bottles in Plaintiff's purse, in addition to her prescribed medications. (R. 266). When Plaintiff was asked about those additional pill bottles, she denied taking them. (*Id.*). Plaintiff was discharged on December 31, 2006. (R. 262). At that time, her condition had improved with treatment, and she was prescribed Prednisone, albuterol sulfate, Bactrim DS (antibiotic), and Hycotuss (expectorant). *(Id.).*

On January 3, 2007, Plaintiff was admitted to the ER at Helen Keller Hospital because of difficulty breathing and chest pain. (R. 273). The examining physician found Plaintiff's lungs were adequately inflated and free of acute infiltrate, and manifested no acute abnormality. (R. 275). Plaintiff was discharged the same day. (R. 273).

At 7:19 p.m. on February 26, 2007, Plaintiff was admitted to the ER at Shoals Hospital with complaints of an asthma attack. (R. 411, 420). Plaintiff received bronchodilator treatment, which afforded complete relief, and counseled about smoking cigarettes. (R. 414). Plaintiff was prescribed

4

albuterol sulfate (inhaler), medrol, Proventil, and erythromycin (antibiotic), and discharged. (R. 417).

At 7:08 a.m. on February 28, 2007, Plaintiff was admitted to the ER at Shoals Hospital with complaints of shortness of breath. (R. 401). A nurse noted in Plaintiff's records that Plaintiff was uncooperative and hostile towards her. (R. 402, 404, 405). Plaintiff refused tests, X-rays, and an IV. (R. 400, 405-06). It was also noted that a bronchodilator treatment was given with complete relief of Plaintiff's symptoms and that Plaintiff was counseled about smoking cigarettes. (R. 400). Plaintiff was discharged shortly thereafter. (R. 401).

At 2:53 p.m. on March 29, 2007, Plaintiff was admitted to the ER at Shoals Hospital with complaints of shortness of breath. (R. 392). Plaintiff's file reveals that she was uncooperative and that she would not allow the doctor to evaluate her. (R. 390). After refusing treatment, Plaintiff told a nurse that she was going to call an ambulance to take her to another hospital. (R. 396). Plaintiff was discharged at 3:09 p.m. (R. 392).

Plaintiff was seen at the Southern Rural Health Consortium on January 29, 2008, with complaints about her asthma, although it was noted that she was in no acute distress and that she had not been taking her inhalers. (R. 278). On February 22, 2008, Plaintiff had a follow-up visit at the Southern Rural Health Consortium, and it was noted that she had improved since her previous visit. (R. 277).

On March 14, 2008, Plaintiff was admitted to the ER at Shoals Hospital because of alleged difficulty breathing. (R. 296, 301, 304). At that time, Plaintiff had been taking albuterol sulfate (inhaler), Proventil (inhaler), and Prednisone. (R. 304). Plaintiff was unwilling to answer the nurse's questions, and refused to allow the arterial blood gas ("ABG") test to be administered. (R. 307). In

addition to her current medications, Plaintiff was given Solu-medrol. (R. 296). The treating physician found that Plaintiff's lungs were clear with no evidence of wheezing, rhonci, or rales, and her chest x-ray was negative. (*Id.*). The doctor also exhorted her to quit smoking and discussed methodologies for doing so. (*Id.*). Plaintiff was discharged the next day. (R. 296).

At 2:40 p.m. on April 21, 2008, Plaintiff was admitted to the ER at Shoals Hospital with complaints of difficulty breathing. It was noted that Plaintiff left without being seen thirty-five minutes later because she was did not want to wait. (R. 384, 387).

On May 2, 2008, Plaintiff was admitted to the ER at Russellville Hospital with complaints of difficulty breathing and non-specific chest pain. (R. 314, 316). Radiographs of Plaintiff's chest were taken on the date of admission, and the examining physician found apparently normal pulmonary vasculature and no identifiable acute cardiopulmonary process. (R. 325). The examining physician also noted that Plaintiff's lung fields were clear and well aerated, and that no pleural effusion or pneumothorax was seen. (R. 326). Plaintiff was given Solu-Medrol, Avelox (antibiotic), Endal HD (cough syrup with hydrocodone), Prednisone, and Nebulizer treatments with Combivent, Proventil, and Albuterol. (R. 314). After making steady improvement with treatment, Plaintiff was discharged on May 5. (*Id.*).

At 11:05 p.m. on May 17, 2008, Plaintiff was admitted to the ER at Shoals Hospital with complaints of difficulty breathing. (R. 366, 368, 370). Hospital staff again described Plaintiff as uncooperative (R. 367, 371, 374), and it was noted that she would not answer the doctor's questions or hold her hand in place for an IV to be started. (R. 374). Her chest exam on admission revealed that her lungs were free of infiltrate, mass, or edema. (R. 377). Plaintiff was discharged at 2:20 a.m. on May 18 after being given albuterol and Solu-Medrol and showing much improvement. (R. 368).

At 11:22 p.m. on May 21, 2008, Plaintiff was admitted to Shoals Hospital with complaints of difficulty breathing. (R. 328, 332). Her chest x-ray was normal and revealed clear lungs, and the examining physician found that Plaintiff had only minimal wheezes on forced expiration. (R. 330, 335). Plaintiff was continued on her active medications and given Solu-Medrol and steroids, to which she responded quickly. (R. 328, 330, 332). Plaintiff was discharged at 8:19 a.m. on May 22 (R. 328).

At 12:47 a.m. on May 26, 2008, Plaintiff was admitted to the ER at Shoals Hospital with complaints of difficulty breathing. (R. 347). The doctors and nurses reported that Plaintiff was uncooperative and very rude on this occasion. (R. 349-50). She refused to provide information about her current medications (R. 353, 356); she turned her back on the doctor, ignoring his questions when he attempted to evaluate her (R. 349); and she refused to allow her blood to be drawn. (*Id.*). Ultimately, the examining physician concluded that Plaintiff was in no acute distress and that she should be discharged. (*Id.*).

In a consultative exam on September 9, 2008, Dr. Clarke Woodfin, Jr. found that Plaintiff had eczema on her face, neck, flexor surfaces of her elbows, and lower abdominal wall. (R. 463). Plaintiff's chief complaint on that occasion was difficulty breathing, and she listed her current medications as Combivent inhaler, Symbicort inhaler, Albuterol inhaler, Proventyl inhaler, Advair Discus 250/50, and Prednisone 20mg, 1 qd. (R. 463). However, Plaintiff told Dr. Woodfin that she had not taken any of her medications that morning, although it was 11:00 a.m. at that time. (R. 463). Plaintiff also said that she could walk with the asthma for about ten minutes in advance of attacks, but could not walk up a hill, and could not lift or carry more than twenty pounds. (R. 462). Plaintiff told Dr. Woodfin that her attacks occur daily and clear up in about ten minutes with her medications,

7

but that they may last all day without medications. (*Id*.). Dr. Woodfin noted that Plaintiff: sat down and arose from sitting at normal speeds and in a normal fashion; was able to move about the room without apparent physical limitation; got onto the examining table without difficulty; indicated she was not in any pain; was able to go to a full squat and rise; stood well on either leg alone; and had full range of movement in all joints. (R. 463). Dr. Woodfin examined Plaintiff's lungs and found them to be "clear to P&A [percussion and auscultation] except for mild scattered inspiratory and expiratory wheezing in all fields." (R. 463). Dr. Woodfin also indicated that Plaintiff had no shortness of breath ("SOB") or dyspnea on exertion ("DOE") associated with the tasks of the examination. (R. 463).

On September 22, 2008, Plaintiff received a consultative psychiatric exam and a physical RFC assessment. (R. 471-93). Plaintiff's psychiatric exam did not reveal any medically determinable impairments. (R. 471-84). In Plaintiff's RFC exam, the examiner noted the presence of eczema, but found Plaintiff to be only partially credible with respect to her COPD because her Pulmonary Function Tests were above the listing level, and Plaintiff had no wheezing or shortness of breath associated with the tasks of the examination. (R. 491). The examiner determined that Plaintiff could lift fifty pounds occasionally, carry twenty-five pounds frequently, stand for about six hours with normal breaks in an eight-hour workday, and sit for approximately six hours with normal breaks in an eight-hour workday. (R. 487). With regard to environmental limitations, the examiner noted that Plaintiff should avoid concentrated exposure to extreme temperatures, humidity, unprotected heights, hazardous machinery, and respiratory irritants such as fumes and dust. (R. 490).

Plaintiff was examined at Russellville Hospital on May 11, 2009 and May 29, 2009. On both occasions Plaintiff's lungs were noted as clear. (R. 510-11).

At 10:05 p.m. on August 3, 2009, Plaintiff was admitted to the ER at Shoals Hospital with complaints of shortness of breath. (R. 522). It was noted that she was short of breath even at rest and that her breathing was labored. (R. 524). She was given albuterol and Combivent for her breathing and discharged at 11:22 p.m. that same day. (R. 522).

On August 9, 2009, Plaintiff was admitted to the ER at Russellville Hospital with complaints of right facial swelling consistent with cellulitis. (R. 505). She was given antibiotics, and after showing marked improvement, she was discharged on August 11. (R. 505). Also, it was noted that her lungs were clear with no wheezing. (R. 506).

On August 14, 2009, Plaintiff was admitted to the ER at Russellville Hospital with complaints of shortness of breath. (R. 501-04). On that date the doctor noted Plaintiff's lungs were well expanded, that she had no large pleural effusions, and her blood gases were "quite good;" however, Plaintiff was found to have significant bronchospasm, both inspiratory and expiratory, as well as diarrhea. (R. 500-01). Plaintiff was given Solu-medrol, albuterol, Atrovent, Pulmicort, Prednisone, and Cholestyramine. The doctor counseled Plaintiff about the problems of smoking and bronchospastic disease, and was discharged on August 18. (R. 501-02).

On October 30, 2009, Plaintiff had a follow-up visit at Russellville Hospital. Plaintiff's lungs were found clear. (R. 498).

**II. ALJ Decision**

Determination of disability under the Act requires a five step analysis. *See* 20 C.F.R. § 404.1520(a). If at any step a determination of disability can be made, the analysis stops; however, if a determination cannot be made, then the analysis proceeds to the next step. *See* 20 C.F.R. § 404.1520(a)(4). First, the ALJ must determine whether the claimant is engaged in any substantial

gainful activity, *i.e.*, activity done for pay or profit which involves significant mental or physical activity. *See* 20 C.F.R. § 404.1520(b). Second, if the claimant is not engaged in any such activity, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that is "severe," *i.e.*, an impairment which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). Third, the ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 ("the Listing"). *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.

Before proceeding to steps four and five, the ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). The ALJ determines the claimant's RFC based on all the relevant medical and other evidence in her case record, as explained in 20 C.F.R. § 404.1545.

In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If the claimant is determined to be capable of performing past relevant work, she is deemed not to be disabled. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step, in which the ALJ must determine whether the claimant is able to perform any other work. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant

numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. *Id*.

In order to determine whether there are jobs which someone with the claimant's impairments could perform, the ALJ may (1) apply the Medical Vocational Guidelines (the "grids"), found in 20 C.F.R. § 404, Subpart P, Appendix 2, and (2) pose hypothetical questions to a vocational expert ("VE"). *Watson v. Astrue*, 376 Fed. Appx. 953 (11th Cir. 2011) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004)).

After determining that Plaintiff's date last insured was December 31, 2008 (R. 19), the ALJ found that Plaintiff: (1) had not engaged in any substantial gainful activity since her (amended) alleged onset date of July 31, 2007 (R. 19); (2) had the severe impairments of COPD, asthma, and eczema (R. 19); but (3) these impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. 24). The ALJ specifically noted that Plaintiff's impairments were not attended by any of the findings specified in Section 3.01 and Section 8.01 of the Listing. (*Id.*).

The ALJ then determined that Plaintiff had the RFC to perform light work. (R. 24). The ALJ found that Plaintiff was capable of frequently lifting eight to ten pounds with either hand, occasionally lifting twenty pounds with either hand, sitting for at least one hour, standing for twenty minutes, and walking one-half block. (R. 24). The ALJ also determined that Plaintiff could perform work in a climate-controlled environment with a sit/stand option, normal breaks, and lunch, and should not be exposed to extreme temperatures or respiratory irritants such as dust or smoke. (*Id.*). The ALJ held that although Plaintiff's medically determinable impairments could reasonably be

expected to cause her alleged symptoms, her statements about the intensity, persistence, and limiting effects of those symptoms were not credible. (R. 25).

After finding that Plaintiff was unable to return to her past relevant work, the ALJ concluded that there were a significant number of jobs in the national economy that Plaintiff could perform, given her age, education, work experience, and RFC. (R. 27, 28). The ALJ also noted that he did not find Plaintiff's testimony credible for total disability, because even though her symptoms had resolved with treatment, she had made no effort to return to work. (R. 29). Based upon these findings, the ALJ held that Plaintiff was not disabled. (R. 29).

### III. Plaintiff's Argument for Remand or Reversal

Plaintiff has not filed a brief in this case. Although the Eleventh Circuit has not addressed the effect a claimant's failure to file a brief has on the district court, "the majority of districts, including the Northern District of Alabama have reviewed the record to determine whether the ALJ properly applied legal standards and supported his factual conclusions with substantial evidence, despite the claimant not filing a brief." *Weems v. Astrue*, 2012 WL 2357743, 8 (N.D. Ala. 2012); *c.f. Mitchell v. Apfel*, 1999 U.S. Dist. LEXIS 17549 (N.D. Ala.1999).

In her argument to the appeals council, Plaintiff alleged (1) that there was not substantial evidence to support the ALJ's determination that her asthma did not meet or medically equal the criteria of the Listing (R. 6-8), (2) that the ALJ misapplied the standard for evaluating her subjective pain testimony (R. 8-11), (3) that the ALJ failed to develop a full and fair record (R. 11-12), and (4) that there was not substantial evidence to support the ALJ's determination of her RFC. (R. 12).

## IV. Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence or whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). While less than a preponderance, substantial evidence is also "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir.1995). The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Martin*, 894 F.2d at 1529. Legal standards are reviewed *de novo*. *Moore*, 405 F.3d at 1211.

## V. Discussion

The court finds that the ALJ's decision is supported by substantial evidence and that the ALJ correctly applied the law in reaching his decision. Regarding Plaintiff's arguments to the Appeals Council, the court finds that (1) substantial evidence supports the ALJ's finding that Plaintiff's asthma did not meet or medically equal the criteria of the Listing, (2) the ALJ did not misapply the

Eleventh Circuit's standard for evaluating pain, (3) the ALJ developed a full and fair record, and (4) substantial evidence supports the ALJ's determination of Plaintiff's RFC.

### A. There Is Substantial Evidence to Support the ALJ's Finding that Plaintiff's Asthma Did Not Meet or Medically Equal the Criteria of the Listing.

In her brief to the Appeals Council, Plaintiff argues that there is not substantial evidence in the record to support the ALJ's finding that her asthma did not meet or medically equal the criteria of Listing 3.03(B). (R. 7). The criteria for asthma in the Listing include "attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year." 20 C.F.R. § 404, Subpart P, Appendix 1, Listing 303(B). The Listings define "attacks of asthma" as "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting." 20 C.F.R. § 404, Subpart P, Appendix 1, Listing 300(C). After careful review, the court finds that there is in fact substantial evidence to support the ALJ's finding that many of Plaintiff's hospital visits were not the result of an "attack of asthma," as defined by the Listings.

Plaintiff alleged a disability onset date of July 31, 2007. Her date last insured was December 31, 2008. The ALJ's decision was dated April 28, 2010. For her period of disability and DIB claim, Plaintiff would have to show that her asthma met the criteria of the Listing between July 31, 2007, and December 31, 2008. *C.f. Jones v. Comm'r of Soc. Sec.,* 181 F. App'x 767, 773 (11th Cir. 2006). For her SSI claim, she would have to show that her asthma met the criteria of the Listing between July 31, 2007, and April 28, 2010. *Id*.

After her alleged onset date, Plaintiff went to the ER on six occasions in 2008: March 14, April 21, May 2, May 17, May 21, and May 26. (R. 296-390, 533-50). On at least one of these occasions, Plaintiff was hospitalized for longer than twenty-four hours, so that incident counts as two attacks for purposes of the Listings. (R. 314). *See* 20 C.F.R. § 404, Subpart P, Appendix 1, Listing 303(B). However, there is considerable doubt whether her other ER visits were the result of an "attack of asthma" as defined by the Listings, or whether these alleged attacks occurred in spite of prescribed treatment.

Many of Plaintiff's alleged attacks apparently did not require intensive treatment, as Plaintiff frequently interfered with the doctors' and nurses' attempts to treat her, or she simply refused treatment altogether. (R. 307, 349, 353, 356, 374, 384-87). For example, upon Plaintiff's admission to the ER on May 26, 2008, Plaintiff refused to answer the doctor's questions and turned her back on him when he attempted to speak to her. (R. 349). The doctor determined that Plaintiff was in "no acute distress," that she was in good, stable condition, and that she should be discharged. (*Id.*). On April 21, 2008, Plaintiff grew tired of waiting after only thirty-five minutes, and left the hospital without being treated (R. 384, 387). Such action is inconsistent with a claim that Plaintiff was suffering from an asthma attack serious enough to meet the criteria of the Listings.

After May 2008, Plaintiff's next ER visit on record was August 3, 2009. (R. 522). On August 14, 2009, Plaintiff again visited the ER, and on this occasion the doctor noted that she was uncooperative and had not been taking her medication at home. (R. 501-04). Plaintiff also had three routine examinations in 2009, and on each of these occasions the examining physician noted that Plaintiff's lungs were clear. (R. 498, 510-11). When Plaintiff was hospitalized for cellulitis on August 9, 2009, it was also noted that her lungs were clear with no wheezing. (R. 506).

15

During Plaintiff's consultative examination on September 9, 2008, Dr. Woodfin found that Plaintiff had no shortness of breath or dyspnea on exertion with the tasks of the examination and that her lungs were "clear to P&A [percussion and auscultation] except for mild scattered inspiratory and expiratory wheezing." (R. 463). Furthermore, Plaintiff admitted to Dr. Woodfin that she had not taken her medications that morning, although it was already 11:00 a.m., yet she did not show any signs of asthma despite not taking her medication. (R. 463).

In reaching his decision, the ALJ considered Plaintiff's medical records, and noted her history of being an uncooperative and noncompliant patient, failure to follow the advice of her treating physicians and take her prescribed medications consistently, and the discrepancies between her complaints and the objective medical evidence. (R. 20-24). As the Eleventh Circuit noted in *Ellison v. Barnhart*, 355 F.3d 1272 (11th Cir. 2003), "refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability;" however, "poverty excuses non-compliance." *Id*. at 1275. Although there is some evidence in this case that Plaintiff's financial situation may have occasionally prevented her from obtaining medication, Plaintiff's impoverished state is no justification for her habitually defiant and uncooperative behavior towards her treating physicians and nurses, and Plaintiff's poverty does not excuse her failure to take those medications to which she did have access.

Plaintiff's medical records reveal considerable doubt that the criteria of Listing 3.03(B) are met in this case, and the court finds that there is substantial evidence to support the ALJ's finding on this issue.

> **B.    The ALJ Did Not Misapply the Eleventh Circuit's Standard for Evaluating Pain.**

In her argument to the appeals council, Plaintiff alleges that the ALJ misapplied the Eleventh Circuit's standard for evaluating pain because (1) the ALJ only cited to Social Security Ruling 96-7P, but failed to explain how it was applied, and (2) the ALJ failed to articulate adequate reasons for discrediting Plaintiff's pain testimony. (R. 8, 10). However, for the pain standard to be an issue, Plaintiff must first have alleged that she is in pain, and she has not done so. In her hearing before the ALJ, Plaintiff did not mention that she was experiencing any pain associated with her impairments. (R. 80-111). Also, in her 2006 hearing before the ALJ for her previous disability claim, Plaintiff made no mention of pain. (R. 45-79). Nor did Plaintiff allege pain in any of the forms she submitted to the Social Security Administration. Thus, there appears to be no issue with the ALJ "ignoring" Plaintiff's pain testimony, as there was no pain testimony for the ALJ to ignore.

> **C.    The ALJ Developed a Full and Fair Record.**

In her brief to the appeals council, Plaintiff claimed that the ALJ did not develop a full and fair record because he failed to resolve the conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). (R. 11-12). However, this contention is without merit. Plaintiff has not shown that there is a conflict between the VE's testimony and the DOT; but even if there is, the Eleventh Circuit has held that "when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). The court finds nothing to suggest that the ALJ failed to develop a full and fair record.

**D.     There Is Substantial Evidence to Support the ALJ's Determination of Plaintiff's RFC.**

In her brief to the appeals council, Plaintiff argued that the ALJ's determination of her RFC was conclusory and unsupported by the evidence. (R. 12). This assertion is belied by the contents of the ALJ's decision, in which he spent three pages discussing his analysis of the evidence regarding Plaintiff's RFC. (R. 24-27). To be sure, it is Plaintiff's argument (rather than the ALJ's decision) that is conclusory and unsupported by the evidence. In determining that Plaintiff could perform light work, the ALJ considered Plaintiff's entire medical record, as well as her consultative examinations with Dr. Woodfin and the state agency disability consultant. The ALJ accurately noted Plaintiff's limitations and capabilities in the hypothetical questions that he posed to the VE, and the VE identified jobs that Plaintiff could perform in the light work category. (R. 109-10). There is more than substantial evidence to support the ALJ's finding that Plaintiff retained the RFC to perform light work.

## VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and that proper legal standards were applied in reaching this determination. The Commissioner's final decision is, therefore, due to be affirmed and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this ___20th___ day of March, 2013.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE